IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN L. JONES              :
                             :
                             :
    v.                       :   Civil No. CCB-11-793
                             :
                             :
CAROLANE WILLIAMS, *et al.*  :
                             :

## MEMORANDUM

This case arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff Steven Jones, a police lieutenant at Baltimore City Community College ("BCCC"), claims that the defendants, BCCC and several of its employees, subjected him to racial discrimination and unlawfully withheld overtime compensation. The defendants have filed a Motion for Summary Judgment (ECF No. 44).[1] The issues are fully briefed and no oral argument is necessary. Local Rule 105.6. For the reasons explained below, the court will grant the defendants' motion as to Jones's Title VII claims but deny it with respect to his FLSA overtime claims.

## BACKGROUND

Steven Jones currently works as a police supervisor with the rank of lieutenant at BCCC. (Defs.' Mot. Summ. J., ECF No. 44, at 2, Ex. 1; Deposition of Steven Jones, ECF No. 51, at 7-8.) Jones's duties include making shift assignments, reviewing paperwork, responding to calls in the event he is needed, and "mak[ing] sure everybody is on their post, looking clean and doing their

---

[1] Also pending are Motions to Obtain Documents (ECF No. 22) and for Summary Judgment (ECF No. 30) or to appoint counsel filed by Jones.

1

jobs." (Jones Dep. at 9.) Jones, who is African American, is one of two police lieutenants at BCCC. The other lieutenant is white, and a third, who is African American, recently left the college. (*Id.*). All police lieutenants at BCCC are classified as exempt from overtime compensation. (Declaration of Tony Warner, ECF No. 44, Ex. 7.)

In the spring of 2009, after informing his supervisor and receiving approval, Jones provided a statement to an investigator concerning the termination of an employee of BCCC. (Am. Compl., ECF No. 21, at 2-3.) The employee had been terminated after one of Jones's subordinate security guards made an investigative stop of the employee. (*Id.* at 2.) Jones alleges that after these events, incidents that occurred while he was on duty that required attention above his rank were referred outside of the "proper channels." (*Id.* at 3.) Shortly after these events, Jones was also assigned to work two shifts a day. (*Id.*; Jones Dep. at 62.) Jones has alleged that this reassignment was in retaliation for the testimony he gave and based on racial discrimination because his fellow white lieutenant was not assigned a second shift. (Jones Dep. at 59, 62.) The second shift assignment was "temporary" but lasted a total of thirty months, during which time Jones was on duty or on call 16-18 hours at a time. (Jones Dep. at 59.) It also appears that Jones was assigned to work this double shift alone, while the third shift of the day was assigned to two lieutenants. (Jones Dep. at 83.)

In February 2010, Jones was required to work for several days continuously because of two major snow storms. (Am. Compl. at 4-5.) During this time, in addition to his normal duties, Jones was responsible for "ensuring that the backup generators were functioning properly" and "setting up traffic barrels." (*Id.* at 4-5.) Jones seeks compensation for what he estimates to be "220 hours" in overtime caused by these storms. (*Id.* at 4.) BCCC authorized "a one time cash

overtime payment for public safety employees that worked overtime during the blizzard," (Defs.' Mot. Summ. J. at 17), but Jones believes this has not compensated him for the overtime he has worked at BCCC. (Jones Dep. at 31.)

Finally, Jones alleges that since he has sought compensation for the overtime, he has been subjected to harassment by superiors. (Am. Compl. at 5, 7, 9.)

## ANALYSIS

I. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). Whether a fact is material depends upon the substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)). "Where . . . the movant seeks summary judgment on an affirmative defense," as the defendants do here with respect to their FLSA exemption claim, "it must conclusively establish all essential elements of that defense." *Ray Communications, Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294,

299 (4th Cir. 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)) ("defendant may prevail on a motion for summary judgment on an affirmative defense when it has produced credible evidence that would entitle it to a directed verdict if not controverted at trial").

II. Title VII Claims

    A. Disparate Treatment

    To survive summary judgment on a Title VII disparate treatment claim, absent direct evidence of discrimination, a plaintiff must present a prima facie case under the *McDonnell Douglas* burden-shifting framework. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 732, 807 (1973)). A plaintiff must show that "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing his job at a level that met his employer's legitimate expectations . . . ;" and (4) he suffered the adverse action "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Trustees of the U. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).

    While he appears to have satisfied the first three prongs, Jones fails at the fourth prong to present a prima facie case of disparate treatment. Jones, as an African American, is a member of a protected class. The defendants do not dispute that, for thirty months, from spring 2009 to February 2012, Jones was assigned a second shift, working "16-18 hours," while his two colleagues, who held the same rank and position at the college, were not. (Jones Dep. at 59, 62.) Obviously, his assignment to double duty indicates that BCCC believed Jones was performing his job at his employer's legitimate expectations.

    This double assignment constituted an adverse employment action under Title VII.

Reassignment ordinarily can be a basis of a Title VII claim only if it "has some significant detrimental effect" such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999); *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006) ("Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." (internal quotations omitted)); *Valentin-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 97 (1st Cir. 2006) (finding that being singled out for double shifts constituted adverse employment action). By requiring Jones to work double shifts without any change in his salary for thirty months, BCCC effectively subjected him to a pay decrease and substantially altered the conditions of his employment. (*See* Am. Compl. at 10.)[2]

      Jones has not shown, however, that the circumstances surrounding his assignment give rise to an inference of discrimination. Jones alleges that he was subject to discrimination because he was given the double assignment while his white colleague was not. But, at the time of the reassignment, Jones was one of three lieutenants at BCCC, one of whom was also African American. While the mere fact that other members of a protected class are not treated adversely does not, by itself, preclude an inference of discrimination, Jones has offered no other indication that race played any role in his reassignment. *See Adams*, 640 F.3d at 559 (suggesting that even if plaintiff was the "only" Christian in his position, this sole fact would not create an inference of discrimination). Jones himself has indicated that he does not believe racially discriminatory animus motivated his assignment to the second shift. (Jones Dep. at 83-84.) Thus, the circumstances surrounding Jones's reassignment do not give rise to an inference of

---

[2] Jones also attached over a year of pay stubs to his original complaint that indicate he was paid no more than his base salary for 40 hours of work per week during the time that he was assigned to a double shift.

discrimination. Accordingly, summary judgment as to Jones's disparate treatment claim will be granted.

    B. Retaliation

To establish a prima facie case of retaliation under Title VII and survive summary judgment, a plaintiff must show "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003). Activity is "protected" if it is part of "an ongoing investigation or proceeding under Title VII" or if it is undertaken "in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

Even though he may have suffered an adverse employment action, Jones has failed to demonstrate that he engaged in protected activity. According to the undisputed facts, Jones offered testimony to an investigator regarding the termination of a BCCC employee. He alleges that his reassignment to the second shift occurred shortly after this statement. However, Jones has not presented any evidence that the statement he made was related to a Title VII investigation, nor that his statement was in any way related to discrimination. As a result, the defendants' motion with respect to Jones's retaliation claim will be granted.

    C. Hostile Environment

In order to prevail on a racially hostile work environment claim, a plaintiff must show that he was subject to harassment that was "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). Jones has

alleged that he was forced to endure several hostile meetings in seeking overtime compensation, but he has not presented any evidence that he has been subjected to "severe or pervasive" harassment. The defendants' motion with respect to Jones's hostile work environment claim will also be granted.

II. Fair Labor Standards Act

    A. Proper Defendants

When Jones filed his initial complaint he only named employees of the college in their individual capacities. The defendants moved to dismiss Jones's suit on this basis, arguing that an FLSA suit must be maintained against an "employer" of the plaintiff and that Jones failed to name an employer. The court granted Jones leave to amend his complaint to name proper defendants or to allege additional facts upon which an FLSA claim against the already named defendants could be maintained.

While Jones's amended complaint now names BCCC and several of its employees in their official capacities, he has not demonstrated that the suit can proceed against the named defendants in their individual capacities. As the court previously explained, a suit can go forward under the FLSA if the plaintiff demonstrates that the defendants had sufficient control over his employment conditions such that they are properly classified as "employers" under the FLSA. Thus, Jones can proceed with his suit against BCCC because the college is his employer and he challenges the college's overtime policy with respect to his job position.[3] However, Jones has not shown that any of the defendants he names were themselves individually responsible for the

---

[3] Because BCCC is a state institution, Jones can proceed only if Maryland waived its Eleventh Amendment immunity with respect to Jones's FLSA claim. *See Lee-Thomas v. Prince George's County Public Schools*, 665 F.3d 244, 248-49 (4th Cir. 2012). The Fourth Circuit, relying on the Maryland Court of Appeals, recently held that Md. Code. Ann., Cts. & Jud. Proc. § 5-518, waived the Eleventh Amendment defense with respect to suits in federal court against local school boards for less than $100,000. *Id.* at 247, 255 (citing *Bd. of Educ. Baltimore County v. Zimmer-Rubert*, 973 A.2d 233 (2009)). The following provision in the Maryland Code, § 5-519, does the same for state community colleges, like BCCC. Thus, Jones's FLSA claim is not barred by the Eleventh Amendment.

allegedly unlawful policy. Accordingly, the defendants' motion for summary judgment will be granted with respect to the named defendants in their individual capacities.

      B. Overtime Claim

      Under the FLSA, employees must be paid time and a half for work over forty hours per week. 29 U.S.C. § 207(a)(1). The defendants do not dispute that Jones worked overtime for which he was not compensated. Rather, they assert that Jones's job is exempt from the FLSA's overtime requirements.

      The FLSA exempts individuals who are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The application of an exemption under the FLSA is "a matter of affirmative defense on which the employer bears the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). An employer must show "by clear and convincing evidence" that the employee's job is exempted, and the exemptions are to be "narrowly construed against the employer[] . . . and limited to those establishments plainly and unmistakably" within their terms. *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 691-92 (4th Cir. 2009) (quoting *Arnold v. Ben Kanowsky Inc.*, 361 U.S. 388, 392 (1960)). The defendants insist that Jones is properly classified as exempt. However, they rely on outdated regulations and have failed to adduce sufficient evidence to meet their burden.

      The defendants argue that Jones is properly exempted because he is a police lieutenant who supervises shifts of other police officers. Relying on the regulations it has promulgated under § 213, the Department of Labor has indicated that because police lieutenants are often primarily responsible for managing subdivisions of officers, they may be properly exempt under the "executive employee" exemption where their job duties "meet all of the requirements set out

in [29 C.F.R. § 541.100]." *See* Wage & Hour Division, U.S. Dep't of Labor, Opinion Letter Dated Oct. 14, 2005, FLSA2005-40. Although the defendants have failed to cite a current regulation on which to base their exemption claim, the executive employee exemption is the most plausible basis for their claim, as the Department of Labor's opinion letter indicates. An employee falls within this exemption if:

> (1) they are "[c]ompensated on a salary basis at a rate not less than $455 per week"; (2) their "primary duty is management of the enterprise . . . or subdivision thereof"; (3) they "customarily and regularly direct[] the work of two or more other employees"; *and* (4) they have "the authority to hire or fire other employees or [their] suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."

29 C.F.R. § 541.100 (emphasis added). The regulations also make clear that "a police officer . . . whose primary duty is to investigate crimes . . . is not exempt under 13(a)(1) of the Act merely because the police officer . . . also directs the work of other employees [while performing such work]." 29 C.F.R. § 541.3(b); *see also Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829-30 (10th Cir. 2012) (private security "field lieutenant" not necessarily exempt); *Mullins v. City of New York*, 652 F.3d 104, 118-19 (2nd Cir. 2011) (police sergeants not exempt).

In *Maestas*, the Tenth Circuit held summary judgment finding that a lieutenant in a small private security force, not unlike the small police department at BCCC, was exempt "was clearly improper." 664 F.3d at 829. The court explained that even though the officer "perform[ed] a mix of managerial duties, such as ensuring that his subordinates [were] well-prepared," and some administrative duties, "like creating schedules," he was not necessarily exempt from overtime because he spent the bulk of his time patrolling and because he received only a minor increase in salary over his non-exempt subordinates. *Id.* at 829-30. Similarly, in *Mullins*, the Second Circuit held that sergeants in the vastly larger New York City police department were not exempt

because they were primarily responsible for law enforcement even though they also had some discretion and supervisory responsibilities. 653 F.3d at 118-119.

Here, the defendants' exemption claim fails summary judgment on two fronts. First, the defendants have failed to adduce any evidence that Jones has any responsibility with respect to hiring or firing or that his opinions are given "particular weight" with regard to these matters. *See* 29 C.F.R. § 541.105. Without such evidence, the defendants cannot sustain an exemption claim under § 541.100.

Second, taking the available facts regarding his job responsibilities in the light most favorable to Jones, the defendants have not convincingly demonstrated that, even though he supervises other officers, Jones's primary duty is not law enforcement. *See* 29 C.F.R. § 541.3(b). As evidence that Jones primarily performs exempt work, the defendants point to Jones's statement that his duties include "making shift assignments . . . review[ing] all paperwork and . . . respond[ing] to calls in the event an officer has an issue or my sergeant is unable to deal with an issue . . . mak[ing] sure everybody is on their post, looking clean and doing their jobs." (Jones Dep. at 9.) However, in interpreting a similar job description ("a lieutenant's 'primary responsibility . . . is to make sure that their people in the field can handle any situation that happens at any time'"), the Tenth Circuit noted that this description could merely encompass "the kind of front-line supervision" that the regulations deem "non-managerial." *Maestas*, 664 F.3d at 830. Elsewhere in the record, Jones has indicated that his duties also include being "on-call" (Jones Dep. at 59), maintaining emergency generators when needed, ensuring campus safety, and setting up traffic barrels. Jones was, apparently, essential to front line security during the snow storms that caused him to work substantial overtime. Jones may perform enough non-

exempt duties like these to fall outside the scope of the exemption. The defendants have certainly not demonstrated his job position falls squarely within an exemption. Accordingly, the defendants' motion for summary judge with respect to Jones's FLSA claim will be denied.

## CONCLUSION

For the reasons stated above, the court will grant the defendants' motion in part and deny it in part. Jones's Motions to Obtain Documents and for Summary Judgment or to appoint counsel also will be denied without prejudice. Prior to deciding whether to appoint counsel, the court will ask the parties to revisit whether mediation with Judge Gallagher might be helpful.

A separate order follows.

| | |
|---|---|
|   9/25/12   |   /s/   |
| Date | Catherine C. Blake |
| | United States District Judge |